NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AV SOLUTIONS, LLC, | Civil Action No.: 11-3503 (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| KEYSTONE ENTERPRISE SERVICES, LLC, | |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court by way of an application for a preliminary injunction filed by Plaintiff on June 17, 2011. Oral argument was held on July 11, 2011. The Court has considered the arguments of counsel and the submissions of the parties in support of and in opposition to the present application, and for the reasons set forth below, Plaintiff's application for a preliminary injunction is denied.

**I.      BACKGROUND**

Plaintiff, AV Solutions, LLC ("AVS"), is a video production company that serves the financial, pharmaceutical, and insurance industries. Defendant, Keystone Enterprise Services, LLC ("Keystone"), provides satellite video broadcast services. In March 2008, AVS made a series of proposals to Hudson Medical Communications, LLC ("Hudson Medical"), a medical education programming company, to provide satellite services for its live meetings with pharmaceutical companies. (Pl.'s Br. in Supp. of Order to Show Cause Appl. ["Pl.'s Opening

Br."] at 6–7.)  AVS indicates that it introduced Keystone to Hudson Medical as its potential satellite services subcontractor for this work.  (Pl.'s Opening Br. at 7.)  Keystone subsequently provided AVS with a written proposal.  (Id.)

On March 1, 2009, the parties entered into a Master Services Agreement ("MSA") governing their relationship.  (Id. at 4)  Incorporated in the MSA was a Non-Competition Agreement, which provided, in relevant part:

> WHEREAS, [Keystone] may be interested in installing and maintaining permanent satellites systems at restaurants and/or hospitality services companies which are actually or potentially engaged in a business relationship with [AVS] (and including any companies which are affiliated or under common ownership with such restaurants and/or hospitality services companies) (generally "Venues"); and
>
> WHEREAS, [AVS] is willing to introduce [Keystone] to Venues for the purpose of having [Keystone] install permanent satellite systems at such Venues, provided that [Keystone] be subject to the restrictions contained in this Agreement;
>
> * * *
>
> [Keystone] shall not, without express prior written consent of [AVS]:
>
> (i) install permanent satellites systems at any Venue introduced to it by [AVS];
>
> (ii) approach or solicit any Venue introduced to it by the Company;
>
> (iii) interfere with, disrupt, alter or attempt to disrupt or alter the relationship, contractual or otherwise, between [AVS] and any Venue introduced to it by the Company; or
>
> (iv) in addition to the foregoing restrictions pertaining to Venues, solicit to provide or provide satellite systems or service relating thereto to any customer of [AVS] (including any companies that are affiliated or under common ownership with such customer) (generally a "Customer") that [AVS] has set forth in Schedule A hereto or that is subsequently identified in writing to [Keystone] as being a Customer of [AVS].  Failure to list a Customer on Schedule A shall not be determinative as to the application of this Agreement to such Customer.

(Id. at Ex. D1, Cert. of Douglas Mack, Ex A.)

AVS alleges that on April 7, 2011, it became aware that Keystone had contracted with Hudson Medical for a May 4, 2011 satellite broadcast at a Ruth's Chris restaurant. (Pl.'s Opening Br. at 8.) Two weeks later, AVS's attorney sent Keystone a letter advising it that it was in violation of the Non-Competition Agreement. (Id. at 9.)

Keystone explains that in November 2010 a company called "HiLine" contacted it about providing satellite services for pharmaceutical launch events. (Def.'s Resp. in Opp'n to Pl.'s Mot. for Prelim. Inj. ["Def.'s Opp'n Br."] at 8.) Keystone states that it provided those services for HiLine on February 1, 2011, and on various dates in May and June of 2011. (Id.) At some point during this relationship, Keystone learned that HiLine's parent company is "Hudson Global," which the parties agree is also the parent company of Hudson Medical. (Id.) Keystone also plans to provide services on July 28, 2011, for 5MM, an entity which the parties agree is also a division of Hudson Global. (Id.)

On June 7, 2011, AVS filed a complaint in New Jersey state court seeking a preliminary injunction preventing Keystone from soliciting or conducting business with any of AVS's customers. (Docket Entry No. 1.) AVS further seeks expedited discovery and attorneys' fees and costs related to its preliminary injunction application. On June 17, 2011, Keystone filed a Notice of Removal with this Court based on diversity of citizenship.

## II.   LEGAL STANDARD

Although the Court applies state law to the substantive issues in this diversity action, the Court "utilize[s] a federal standard in examining requests to federal courts for preliminary injunctions." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 799 (3d Cir. 1989).

There are four factors to consider in assessing a motion for a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably harmed by the denial of relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 879 (3d Cir. 1997).

### III.  DISCUSSION

In this case, the Court need only analyze the second factor of the preliminary injunction analysis, as Plaintiff has failed to show that it will suffer irreparable harm as a result of Defendant's alleged breach of the Non-Competition Agreement.  A party seeking a preliminary injunction must make "a clear showing of immediate irreparable injury." Hohe v. Casey, 868 F.2d 69, 72 (3d Cir. 1989).  "Establishing a risk of irreparable harm is not enough.  A plaintiff has the burden of proving a clear showing of immediate irreparable injury." ECRI v. McGraw–Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (citations and quotation omitted).  "[T]o show irreparable harm, the plaintiff must demonstrate potential harm which cannot be redressed by a legal remedy." Instant Air, 882 F.2d at 801.  Economic loss does not constitute irreparable harm. Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994).  "Loss of potential business opportunities, profits, customers, or contracts is compensable by money damages and does not constitute irreparable injury." Apollo Tech. Corp. v. Centrosphere Indus. Corp., 805 F. Supp. 1157, 1209 (D.N.J. 1992) (citing Instant Air, 882 F.2d at 801; Frank's GMC Truck Center, Inc. v. General Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988); In re Arthur Treacher's Franchisee Litigation, 689 F.2d 1137, 1141 (3d Cir. 1982)).  The Third Circuit has observed that

"even when an action will result in the destruction of a business," a district court's refusal to grant a preliminary injunction is appropriate when the loss is "capable of ascertainment and award at final judgment." Figueroa v. Precision Surgical, Inc., No. 10–4449, 2011 WL 1368778, at *5 (3d. Cir. Apr. 12, 2011) (unpublished) (quoting Instant Air, 882 F.2d at 801)).

      AVS asserts two bases for irreparable harm: (1) that the language of the Non-Competition Agreement expressly provides that breach will cause irreparable harm,[1] and (2) that Keystone's breach of the agreement will cause the destruction of AVS's customer base.  As an initial matter, the Court rejects the contention that the parties have established irreparable harm by agreement.  The Non-Competition Agreement states, "Each party acknowledges that any breach of this Agreement will cause the other Party irreparable harm and both parties agree that preliminary or permanent injunctive relief . . . would be appropriate in the event of breach."  AVS argues that this language is sufficient to establish irreparable harm, relying on National Starch and Chemical Corp. v. Parker Chemical Corp., 530 A.2d 31 (N.J. Super. Ct. App. Div. 1987), Jackson Hewitt, Inc. v. Barnes, No. 10-05108, 2011 WL 181431 (D.N.J. Jan. 18, 2011), and Trico Equipment, Inc. v. Manor, No. 08-5561, 2009 WL 1687391 (D.N.J. Jun. 15, 2009).  Those cases, however, do not stand for the proposition that parties may establish irreparable harm by contract alone.  The courts in those cases instead found irreparable harm based on specific evidence in the record and only noted in dicta that the parties had also contemplated the possibility of irreparable harm due to breach of the covenants at issue.  See National Starch, 530 A.2d at 163; Barnes, 2011 WL 181431, at *4; Trico Equipment, 2009 WL 1687391, at *8–9.  This is because "[a] contractual

---

[1]Plaintiff's counsel, however, retreated from this position at oral argument.  (See Tr. of Proceedings July 11, 2011 ["Hr'g Tr."] 6:19–7:1.)

provision simply cannot act as a substitute for a finding by this Court that determines whether a preliminary injunction is proper." Laidlaw, Inc. v. Student Transp. of America, Inc., 20 F. Supp. 2d 727, 758 (D.N.J. 1998). As such, while the Court does take the language of the Non-Competition Agreement into consideration as part of its analysis of irreparable harm, (see Hr'g Tr. 6:16–19), it rejects the contention that such language may substitute for the preliminary injunction analysis to be made by this Court.

The Court now turns to AVS's central argument for irreparable harm: the destruction of its customer base. AVS argues that if Keystone is not enjoined from doing business with HiLine, 5MM, and Hudson Global, there will be nothing to stop Keystone from taking away all of AVS's customers, including Hudson Medical. Indeed, AVS indicates that its negotiations with Hudson Medical have already been "chilled" by Keystone's actions. (Hr'g Tr. 10:8–16.) AVS offers this as evidence to show that in order to maintain its "turnkey" business model of linking businesses with satellite service providers, like Keystone, AVS must vigorously enforce its non-competition agreements. (Id. at 10:17–11:15.) AVS thus depicts Keystone as a "virus" that has infiltrated its relationships with its customers and undercut its prices. (Id. at 15:9–16:12.) As repeat customers are the "lifeblood" of its business, AVS argues, Keystone may soon destroy its customer base entirely. (Pl.'s Reply Mem. at 13.)

To show that these threatened injuries constitute irreparable harm, AVS points to various state and federal cases for the proposition that "it has long been recognized that destruction to a company's customer base constitutes irreparable injury." (Pl.'s Opening Br. at 11.) Each of the cases referenced by AVS, however, involved either the loss of confidential information, such as trade secrets, or the infringement of a plaintiff's trademark. See Jiffy Lube Intern., Inc. v. Weiss

Bros., Inc., 834 F. Supp. 683, 692 (D.N.J. 1993) (issuing a preliminary injunction in a trademark infringement action); A. Hollander & Son v. Imperial Fur Blending Corp., 66 A.2d 319, 326 (N.J. 1949) ("The purpose of the clause is to protect [the plaintiff] from an employee it suspects but cannot prove is violating the portions of the agreement protecting trade methods and secrets."); National Starch, 530 A.2d at 33 ("Here, we are satisfied that the record adequately supports the reasonableness of a preliminary determination by the Chancery judge that [the defendant] knew trade secrets of [the plaintiff], and that under the circumstances there was sufficient likelihood of inevitable disclosure") (quotation omitted); Global Transport Logistics, Inc. v. Dov Transp., 2005 WL 1017602, at *3 (N.J. Super. Ct. Ch. Div. 2005) (finding issues of fact with respect to "whether or not there are any trade secrets, whether or not there is any confidential and/or proprietary information, and what the defendant said to whom and when."); J.H. Renarde, 711 A.2d at 415 (finding that "the defendants would have access to and become familiar with the plaintiff's clients, client lists and various other alleged confidential information relating to the business").  Indeed, the loss of protected information or the infringement of a trademark is often found to satisfy the requirement of irreparable harm.  See, e.g., Roman Chariot, LLC. v. JMRL Sales & Service, Inc., No. 06-626, 2006 WL 4483165, at *5–7 (D.N.J. July 11, 2006) (comparing cases holding the loss of trade secrets and the infringement of trademarks to constitute irreparable harm).  Here, however, AVS has made no allegation that Keystone has misappropriated any of its confidential information, trademarks, or trade secrets. AVS's reliance on this case law is therefore misplaced.

   This District has, however, addressed claims of irreparable harm that are factually similar to those made by AVS.  In Apollo Technologies v. Centrosphere Industrial, the district court

found that irreparable harm had not been established where the defendant's breach resulted in the loss of existing contracts and potential subsequent contracts.[2]  805 F. Supp. at 1206–11.  The court concluded that such losses were readily compensable by monetary damages, noting that such damages could be computed based on either the plaintiff's proposed contract amount or the price received by the contract winner.  Id. at 1209.  The court further noted that any loss from potential contracts was "entirely speculative."  Id.  AVS's claims of irreparable harm fail for similar reasons.  AVS chiefly alleges loss of business due to Keystone's interference with its contracts with existing customers.  The value of the business lost is thus readily ascertainable based on AVS's previous work with those customers.  While it may be true that Keystone will subsequently do business with Hudson Medical or other AVS customers,[3] the values of AVS's contracts with those customers are likewise known.  AVS further contends that even if harm to its existing contracts would be compensable by damages, the lost value of repeat business from those customers would not.  While AVS does state that its negotiations with Hudson Medical have been "chilled," Hudson Global itself has certified that Hudson Medical "is no longer a client of AV Solutions."  (Def.'s Opp'n Br., Decl. of Jason Goldklang, at ¶ 7.)  The alleged harm thus appears to have already occurred, and AVS has produced no evidence to show that any of its other customers may soon work directly with Keystone.  Any loss of future contracts with Hudson Medical, or other AVS customers, is therefore "entirely speculative" and, in any event,

---

[2] Apollo Technologies also involved an allegation of the loss of trade secrets, but the court found that the plaintiff had failed to show that a protectable trade secret had been disclosed and that, at any rate, the plaintiff had not actually alleged disclosure of the purported trade secrets. 805 F. Supp. at 1210.

[3] AVS admits, however, that it has never done business with HiLine. (See Pl.'s Reply Mem. at 7.)

appears from the record to be compensable by monetary damages.  See Apollo Technologies, 805 F. Supp. at 1209 ("Loss of potential business opportunities, profits, customers, or contracts is compensable by money damages and does not constitute irreparable injury.").[4]  Indeed, even the complete destruction of AVS's business would not automatically render its harm irreparable.  See Figueroa, 2011 WL 1368778, at *5; Instant Air, 882 F.2d at 801.  As such, while the language of the Non-Competition Agreement does contemplate irreparable harm to AVS as a result of Keystone's breach, the Court nonetheless concludes that AVS has failed to make a "clear showing" based on evidence in the record that such breach will in fact cause AVS to suffer "immediate irreparable injury."  The extraordinary remedy of preliminary injunctive relief is therefore inappropriate.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's application for a preliminary injunction is denied.  As Plaintiff's requests for expedited discovery and attorneys' fees and costs depend on this Court's issuance of a preliminary injunction, those requests are likewise denied.  An appropriate Order accompanies this Opinion.


DATED: July 19, 2011                    /s/ Jose L. Linares
                                        JOSE L. LINARES
                                        UNITED STATES DISTRICT JUDGE

---

[4]This District has, however, applied Tennessee law to conclude that the loss "both direct sales to [existing] customers as well as referrals to other potential customers" may be adequate to show irreparable harm.  See Wright Medical Technology, Inc. v. Somers, 37 F. Supp. 2d 673, 682 (D.N.J. 1999).  Aside from applying law that is inapplicable here, that case relied on affidavits showing injury to the plaintiff's "business reputation and customer goodwill," id. at 683, evidence which AVS has not produced here.